## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### Jacksonville Division

**RUBY WARNOCK**

       **Plaintiff,**

**v.**                            **CIVIL ACTION NO.:**

**POSITIVEPSYCHE.BIZ CORP**

       **Defendant.**

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** Plaintiff Ruby Warnock ("Plaintiff" or "Ms. Warnock"), by and through the undersigned counsel, and hereby files this Complaint against Defendant PositivePsyche.Biz Corp ("Defendant") for violations of Title I of the Americans with Disabilities Act and the ADA Amendments Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01, *et seq.* ("FCRA"), and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Ms. Warnock is an adult female who currently resides in Callahan, Florida.

2.     Defendant is a foreign profit corporation with its headquarters and principal place of business in Baltimore, Maryland.  At all times relevant in this Complaint, Defendant conducted business in the State of Florida, including

Nassau County, Florida and Duval County, Florida.

3.      Defendant employs over 15 employees and is a covered employer within the meaning of the ADA and FCRA, at all times relevant to this Complaint.

4.      This Court has jurisdiction over Ms. Warnock's ADA  claims pursuant to 28 U.S.C. §§ 1331 and 1343.

5.      This Court has the power to exercise supplemental jurisdiction over Ms. Warnock's state law claims pursuant to 29 U.S.C. § 1367.

6.      The allegations in this Complaint primarily involve acts and occurrences while Ms. Warnock was employed by Defendant in Nassau County, Florida and Duval County, Florida.  Accordingly, venue is proper within the United States District Court for the Middle District of Florida, Jacksonville Division pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2).

## PLAINTIFF'S COMPLIANCE WITH ADMINISTRATIVE PREREQUISITES

7.      Ms. Warnock has timely complied with all legally required administrative prerequisites prior to initiating this action.

8.      Specifically, Ms. Warnock timely filed her charges of disability discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on or before May 22, 2022.

9.      Pursuant to a work-share agreement between the EEOC and the Florida Commission on Human Relations ("FCHR"), Ms. Warnock's charges of

disability discrimination and retaliation were also timely filed with the FCHR on or before May 22, 2022.

10.    More than 180 days have elapsed since Ms. Warnock's charges were filed with the FCHR without a determination by the FCHR, and thus Ms. Warnock may bring suit under the FCRA pursuant to Fla. Stat. § 760.11.

11.    Ms. Warnock received a Notice of Right to Sue from the EEOC on or about June 8, 2023.

12.    Ms. Warnock has timely filed this action within 90 days of receipt of the EEOC Notice of Right to Sue.

## **FACTS GIVING RISE TO RELIEF**

13.    Ms. Warnock was employed by Defendant from approximately January 9, 2017 until her termination on September 13, 2021.

14.    Ms. Warnock's position with Defendant at the time of her termination was as Human Resources Manager, working primarily remotely from her home in Callahan, Florida.

15.    Ms. Warnock also worked for Defendant on occasion at the Maximus, Inc. ("Maximus") office location in Jacksonville, Florida.

16.    However, during the period of approximately March 2020 through September 2021, Ms. Warnock performed the vast majority of her duties and responsibilities remotely from her home, and not in direct contact with any other employees of Defendant or Maximus.

17.    During the March 2020 through September 2021 period, Ms. Warnock only performed non-remote duties on a very rare and occasional basis when for example, she would need to meet with one of Defendant's employees for a specific purpose.

18.    At all times relevant herein, Ms. Warnock performed her duties in a competent and satisfactory manner.

19.    Ms. Warnock's supervisors at the time of her termination were Sarah Ruiz, Defendant's Vice President of Human Resources, and Chris Thibodeau, Defendant's Vice President of Operations.

20.    At all times relevant herein, Ms. Ruiz and Mr. Thibodeau acted as employees and agents of Defendant.

21.    In 2011, Ms. Warnock was diagnosed with, and treated for thyroid cancer.

22.    Although the treatment of Ms. Warnock's cancer was successful, she continued to remain in remission and has been required to undergo frequent and regular testing for any recurrence of thyroid irregularities or cancer.  This testing has continued since her initial cancer diagnosis through to the present.

23.    Ms. Warnock continues to experience adverse symptoms associated with fluctuations in thyroid levels which include for example, blurred vision, numbness in extremities, dry skin, coarse voice, and hair loss.

24.    Ms. Warnock has also been prescribed and regularly takes thyroid

medication to treat fluctuations in thyroid hormone levels.   Ms. Warncok has been prescribed and taken thyroid medications at various times since her initial cancer diagnosis through to the present.

25.    During the course of her employment with Defendant, and at various times, Ms. Warnock had discussed her thyroid cancer history and/or thyroid condition with Ms. Ruiz and Mr. Thibodeau.

26.    On or about August 30, 2021, Ms. Ruiz notified Ms. Warnock that Defendant would be implementing a mandatory COVID-19 vaccination policy for all employees of Defendant.  Ms. Ruiz further notified Ms. Warnock that she, along with all other employees of Defendant, would need to either provide proof of receiving a COVID-19 vaccine, or obtain an approved religious or medical accommodation as an exemption by September 12, 2021.

27.    During the August 30th conversation, Ms. Warnock informed Ms. Ruiz of her thyroid cancer history and Ms. Warnock's concerns that the vaccine could have a negative affect on her thyroid cancer and thyroid condition. Specifically, Ms. Warnock expressed her concern that although her cancer was currently in remission, the COVID-19 vaccine may regrow the cancer or may have an adverse affect on her thyroid.  Ms. Warnock also expressed concern that her thyroid cancer and thyroid condition may make her immunocompromised, and therefore put her at risk for adverse health consequences regarding her thyroid cancer or thyroid condition if she were to receive the COVID-19 vaccination.

5

28.    Ms. Warnock further informed Ms. Ruiz during the August 30th conversation that she would be seeking an accommodation from the COVID-19 vaccination policy based upon her thyroid cancer and thyroid condition.

29.    On or about September 1, 2021, Ms. Warnock contacted one of her treating healthcare providers to obtain a disability accommodation to exempt her from Defendant's COVID-19 vaccination policy.  Ms. Warnock also scheduled an appointment for a doctor's visit to obtain a disability accommodation, but the earliest available date for the appointment was in October 2021.

30.    On or about September 13, 2021, Ms. Ruiz contacted Ms. Warnock and asked Ms. Warnock whether she had proof of receiving a COVID-19 vaccination.  Ms. Warnock informed Ms. Ruiz that since her request for the accommodation was still pending, she had not received the COVID-19 vaccination as of that date.  Ms. Warnock further informed Ms. Ruiz that she scheduled a doctor's appointment, but that October 2021 was the soonest she would be able to see her doctor in order to obtain her doctor's approval for an accommodation exempting her from Defendant's COVID-19 vaccine based upon her thyroid cancer and thyroid impairment.  Thus, Ms. Warnock was not able to obtain the information requested for a medical accommodation as stated in Defendant's vaccination medical accommodations forms, but Ms. Warnock requested Ms. Ruiz to allow her additional time to obtain an accommodation approval from her doctor.

31.    On or about September 13, 2021, Ms. Warnock also requested reasonable accommodations in lieu of obtaining a COVID-19 vaccine by being allowed to wear a mask, obtain frequent COVID-19 testing, practice social distancing, and continue to perform the majority of her duties remotely.

32.    Ms. Ruiz unreasonably refused to allow Ms. Warnock any more time to provide additional information supporting her need for an accommodation from obtaining a COVID-19 vaccine based upon her disability.

33.    Ms. Ruiz also unreasonably refused to consider any of Ms. Warnock's other accommodations requests pertaining to her disability, and that would allow her to perform the essential functions of her job.

34.    Instead, Ms. Ruiz informed Ms. Warnock that since she had not obtained the COVID-19 vaccine by September 12th, that Ms. Warnock's employment with Defendant was terminated as of September 13, 2021.

35.    It is believed that Mr. Thibodeau and Enrique Ruiz (President of Defendant) were aware of, and involved in the decision to terminate Ms. Warnock's employment.

36.    Neither Ms. Ruiz nor any other employees or agents of Defendant attempted to further determine whether Ms. Warnock's requested accommodations were reasonable, or attempted to engage in any interactive dialogue with Ms. Warnock regarding her disability accommodations request.

37.    Moreover, prior to September 13, 2021, Ms. Ruiz, Mr. Thibodeau,

and other senior management of Defendant were well aware that Ms. Warnock and other employees of Defendant would not be allowed to return to the Maximus Jacksonville onsite office location until at least January 18, 2022 at the earliest. Up until that time, Maximus extended any potential onsite return of Defendant's Maximus Jacksonville employees until at least January 18, 2022. Defendant's Maximus Jacksonville employees, including Ms. Warnock, would be required to continue working remotely and not in direct contact with other employees during that period. Thus, there was no immediate need for Ms. Warnock or any other remote employees to obtain a COVID-19 vaccine at that time.

38.    As a result of Maximus extending the potential return of Defendant's employees to its Jacksonville onsite office location, Mr. Thibodeau and Defendant's senior management determined that Defendant's employees would have until January 18, 2022 to provide proof of compliance with Defendant's mandatory COVID-19 vaccination policy, or face disciplinary action.

39.    In fact, it is believed that as of the date of this Complaint, Defendant's employees continue to work remotely, and not onsite at the Maximus Jacksonville office location.

40.    It is also believed that Defendant's senior management directed the COVID-19 vaccination policy to only be disseminated to certain employees of Defendant, which included Ms. Warnock. Certain other remote employees of Defendant were not informed of the COVID-19 vaccination policy, and were not

required to adhere to the COVID-19 vaccination policy.

41.    Further, many other employees of Defendant either never received a COVID-19 vaccine, or were never required to show proof of receiving a COVID-19 vaccine or proof of a medical or religious accommodation exempting them from Defendant's alleged mandatory COVID-19 vaccination policy.

42.    After Ms. Warnock's termination, Defendant informed employees of Defendant and employees of Maximus that Ms. Warnock resigned and/or that her separation was mutual.  Ms. Warnock did not resign from Defendant, and her separation was not mutual.

43.    Ms. Warnock submits that any reason proffered by Defendant as a legitimate non-discriminatory or non-retaliatory reason for her termination is pretextual.

44.    As a result of Defendant's unlawful acts and practices, Ms. Warnock has suffered and continues to suffer damages.

45.    All conditions precedent to bringing this action have been satisfied, waived or excused.

46.    This Complaint is timely filed.

47.    Ms. Warnock has retained the undersigned law firm to prosecute this action, and has agreed to pay said law firm a reasonable fee for its services.

**COUNT I**
**(Violation of the Americans with Disabilities Act and the Americans**
**with Disabilities Amendments Act of 2008;**
**42 U.S.C. §§ 12101, *et seq.*/Disability Retaliation)**
**(Alternative to Count II)**

48.     Ms. Warnock restates and realleges each and every factual allegation

contained in paragraphs 1 through 47 of this Complaint with the same force and

vigor as if set out here in full.

49.     Defendant, by and through its agents and employees, unlawfully

retaliated against Ms. Warnock in violation of the ADA, because she engaged in

protected activity.

50.     Ms. Warnock is an individual with a disability:

     a.     Because Ms. Warnock has an impairment that substantially

          limits certain major life activities, or alternatively;

     b.     Because Ms. Warnock has a record of an impairment that

          substantially limits certain major life activities.

51.     Ms. Warnock is an otherwise qualified individual because she is, and

has been able to perform the essential functions of her job with or without

reasonable accommodations.

52.     Ms. Warnock engaged in protected activity when she requested

reasonable accommodations on account of her disability.

53.     Ms. Warnock's protected activity was pursuant to her objective and

subjective good faith belief that she was disabled under the ADA and entitled to

protection from unlawful disability discrimination.

54.    Defendant, by and through its agents and employees, took adverse employment actions against Ms. Warnock by, among other things, terminating her employment because of her protected activity.

55.    The acts and omissions committed by Defendant and its agents, officers, and employees were willful, malicious, and in reckless disregard of Ms. Warnock's federally protected rights.

56.    As a direct and proximate result of Defendant's actions and omissions, by and through its employees and agents, Ms. Warnock has suffered and will continue to suffer lost wages, lost benefits and entitlements, loss of earning capacity, and other economic losses, damage to her career and reputation, personal humiliation, emotional distress, mental anguish, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff Ruby Warnock demands judgment against Defendant for compensatory damages and equitable relief including but not limited to, lost back pay, lost benefits, lost front pay, loss of earning capacity, other lost economic damages; non-economic damages including emotional distress and mental anguish, damage to career and reputation, personal humiliation, loss of enjoyment of life; reinstatement; punitive damages; attorney's fees and costs under the ADA; pre-judgment and post-judgment interest; and such other relief that this Court deems just and proper under the

circumstances.

## COUNT II
**(Violation of the Americans with Disabilities Act and the Americans with Disabilities Amendments Act of 2008; 42 U.S.C. §§ 12101, *et seq.*/Denial of Reasonable Accommodations) (Alternative to Count I)**

57.    Ms. Warnock restates and realleges each and every factual allegation contained in paragraphs 1 through 47 of this Complaint with the same force and vigor as if set out here in full.

58.    Defendant, by and through its agents and employees, intentionally discriminated against Ms. Warnock in violation of the ADA by failing to provide Ms. Warnock with reasonable accommodations on account of her disability.

59.    Ms. Warnock is an individual with a disability:

   a.    Because Ms. Warnock has an impairment that substantially limits certain major life activities, or alternatively;

   b.    Because Ms. Warnock has a record of an impairment that substantially limits certain major life activities.

60.    Ms. Warnock is an otherwise qualified individual because she is, and has been able to perform the essential functions of her job with or without reasonable accommodations.

61.    Ms. Warnock requested reasonable accommodations to be excused from Defendant's alleged mandatory COVID-19 vaccination policy on account of her disability.

62.    Ms. Warnock further requested reasonable accommodations that she be allowed to wear a mask, obtain frequent COVID-19 testing, practice social distancing, and continue to perform the majority of her duties remotely in lieu of obtaining the COVID-19 vaccine.

63.    Defendant, by and through its agents and employees, failed to provide Ms. Warnock reasonable accommodations and terminated her employment instead of providing the reasonable accommodations requested.

64.    The acts and omissions committed by Defendant and its agents, officials, and employees were willful, malicious, and in reckless disregard of Ms. Warnock's federally protected rights.

65.    As a direct and proximate result of Defendant's actions and omissions, by and through its employees and agents, Ms. Warnock has suffered and will continue to suffer lost wages, lost benefits and entitlements, loss of earning capacity, and other economic losses, damage to her career and reputation, personal humiliation, emotional distress, mental anguish, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff Ruby Warnock demands judgment against Defendant for compensatory damages and equitable relief including but not limited to, lost back pay, lost benefits, lost front pay, loss of earning capacity, and other lost economic damages; non-economic damages including emotional distress and mental anguish, damage to career and reputation, personal

humiliation, and loss of enjoyment of life; reinstatement; punitive damages; attorney's fees and costs under the ADA; pre-judgment and post-judgment interest; and such other relief that this Court deems just and proper under the circumstances.

**COUNT III**
**(Violation of the Americans with Disabilities Act and the Americans with Disabilities Amendments Act of 2008;**
**42 U.S.C. §§ 12101, *et seq.*/Disability Discrimination)**
**(Alternative to Counts I and II)**

66.    Ms. Warnock restates and realleges each and every factual allegation contained in paragraphs 1 through 47 of this Complaint with the same force and vigor as if set out here in full.

67.    Defendant, by and through its agents and employees, intentionally discriminated against Ms. Warnock on account of her disability in violation of the ADA.

68.    Ms. Warnock is an individual with a disability:

    a.    Because Ms. Warnock has an impairment that substantially limits certain major life activities, or alternatively;

    b.    Because Ms. Warnock has a record of an impairment that substantially limits certain major life activities.

69.    Ms. Warnock is an otherwise qualified individual because she is, and has been able to perform the essential functions of her job with or without reasonable accommodations.

70.     Defendant, by and through its agents and employees, took adverse action against Ms. Warnock by, among other things, terminating Ms. Warnock's employment on account of her disability.

71.     The facts and circumstances of the discriminatory treatment of Ms. Warnock also establish a convincing mosaic of evidence that Defendant, thorough its agents and employees, intentionally discriminated against Ms. Warnock on account of her disability in violation of the ADA.

72.     The acts and omissions committed by Defendant and its agents, officers, and employees were willful, malicious, and in reckless disregard of Ms. Warnock's federally protected rights.

73.     As a direct and proximate result of Defendant's actions and omissions, by and through its employees and agents, Ms. Warnock has suffered and will continue to suffer lost wages, lost benefits and entitlements, loss of earning capacity, and other economic losses, damage to her career and reputation, personal humiliation, emotional distress, mental anguish, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff Ruby Warnock demands judgment against Defendant for compensatory damages and equitable relief including but not limited to, lost back pay, lost benefits, lost front pay, loss of earning capacity, and other lost economic damages; non-economic damages including emotional distress and mental anguish, damage to career and reputation, personal

humiliation, and loss of enjoyment of life; reinstatement; punitive damages; attorney's fees and costs under the ADA; pre-judgment and post-judgment interest; and such other relief that this Court deems just and proper under the circumstances.

## COUNT IV
### (Violation of the Florida Civil Rights Act, Fla. Stat. §§ 760.01 *et seq.*- Disability/Handicap Retaliation)
### (Alternative to Count V)

74.     Ms. Warnock restates and realleges each and every factual allegation contained in paragraphs 1 through 47 of this Complaint with the same force and vigor as if set out here in full.

75.     Defendant, by and through its agents and employees, unlawfully retaliated against Ms. Warnock in violation of the FCRA, because she engaged in protected activity.

76.     Ms. Warnock is an individual with a disability:

a.     Because Ms. Warnock has an impairment that substantially limits certain major life activities, or alternatively;

b.     Because Ms. Warnock has a record of an impairment that substantially limits certain major life activities.

77.     Ms. Warnock is an otherwise qualified individual because she is, and has been able to perform the essential functions of her job with or without reasonable accommodations.

78.     Ms. Warnock engaged in protected activity when she requested reasonable accommodations on account of her disability.

79.     Ms. Warnock's protected activity was pursuant to her objective and subjective good faith belief that she was disabled under the FCRA and entitled to protection from unlawful disability discrimination.

80.     Defendant, by and through its agents and employees, took adverse employment actions against Ms. Warnock by, among other things, terminating her employment because of her protected activity.

81.     The acts and omissions committed by Defendant, by and through its agents and employees, were willful, malicious, and in reckless disregard of Ms. Warnock's rights.

82.     As a direct and proximate result of Defendant's actions and omissions, by and through its employees and agents, Ms. Warnock has suffered and will continue to suffer lost wages, lost benefits and entitlements, loss of earning capacity, and other economic losses, damage to her career and reputation, personal humiliation, emotional distress, mental anguish, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff Ruby Warnock demands judgment against Defendant for compensatory damages and equitable relief including but not limited to, lost back pay, lost benefits, lost front pay, loss of earning capacity, other lost economic damages; non-economic damages including emotional

distress and mental anguish, damage to career and reputation, personal humiliation, loss of enjoyment of life; reinstatement; punitive damages; attorney's fees and costs under the FCRA; pre-judgment and post-judgment interest; and such other relief that this Court deems just and proper under the circumstances.

## COUNT V
**(Violation of the Florida Civil Rights Act, Fla. Stat. §§ 760.01 *et seq.*-
Disability/Handicap Denial of Reasonable Accommodations)
(Alternative to Count IV)**

83.     Ms. Warnock restates and realleges each and every factual allegation contained in paragraphs 1 through 47 of this Complaint with the same force and vigor as if set out here in full.

84.     Defendant, by and through its agents and employees, intentionally discriminated against Ms. Warnock in violation of the FCRA by failing to provide Ms. Warnock with reasonable accommodations on account of her disability.

85.     Ms. Warnock is an individual with a disability:

    a.     Because Ms. Warnock has an impairment that substantially limits certain major life activities, or alternatively;

    b.     Because Ms. Warnock has a record of an impairment that substantially limits certain major life activities.

86.     Ms. Warnock is an otherwise qualified individual because she is, and has been able to perform the essential functions of her job with or without

reasonable accommodations.

87.    Ms. Warnock requested reasonable accommodations to be excused from Defendant's alleged mandatory COVID-19 vaccination policy on account of her disability.

88.    Ms. Warnock further requested reasonable accommodations that she be allowed to wear a mask, obtain frequent COVID-19 testing, practice social distancing, and continue to perform the majority of her duties remotely in lieu of obtaining the COVID-19 vaccine.

89.    Defendant, by and through its agents and employees, failed to provide Ms. Warnock reasonable accommodations and terminated her employment instead of providing the reasonable accommodations requested.

90.    The acts and omissions committed by Defendant, by and through its agents and employees, were willful, malicious, and in reckless disregard of Ms. Warnock's rights.

91.    As a direct and proximate result of Defendant's actions and omissions, by and through its employees and agents, Ms. Warnock has suffered and will continue to suffer lost wages, lost benefits and entitlements, loss of earning capacity, and other economic losses, damage to her career and reputation, personal humiliation, emotional distress, mental anguish, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff Ruby Warnock demands judgment against

Defendant for compensatory damages and equitable relief including but not limited to, lost back pay, lost benefits, lost front pay, loss of earning capacity, and other lost economic damages; non-economic damages including emotional distress and mental anguish, damage to career and reputation, personal humiliation, and loss of enjoyment of life; reinstatement; punitive damages; attorney's fees and costs under the FCRA; pre-judgment and post-judgment interest; and such other relief that this Court deems just and proper under the circumstances.

**<u>COUNT VI</u>**
**(Violation of the Florida Civil Rights Act, Fla. Stat. §§ 760.01 *et seq.*-**
**Disability/Handicap Discrimination)**
**(Alternative to Counts IV and V)**

92.    Ms. Warnock restates and realleges each and every factual allegation contained in paragraphs 1 through 47 of this Complaint with the same force and vigor as if set out here in full.

93.    Defendant, by and through its agents and employees, intentionally discriminated against Ms. Warnock on account of her disability in violation of the FCRA.

94.    Ms. Warnock is an individual with a disability:

　　　　a.    Because Ms. Warnock has an impairment that substantially limits certain major life activities, or alternatively;

　　　　b.    Because Ms. Warnock has a record of an impairment that

20

substantially limits certain major life activities.

95.     Ms. Warnock is an otherwise qualified individual because she is, and has been able to perform the essential functions of her job with or without reasonable accommodations.

96.     Defendant, by and through its agents and employees, took adverse action against Ms. Warnock by, among other things, terminating Ms. Warnock's employment on account of her disability.

97.     The facts and circumstances of the discriminatory treatment of Ms. Warnock also establish a convincing mosaic of evidence that Defendant, thorough its agents and employees, intentionally discriminated against Ms. Warnock on account of her disability in violation of the FCRA.

98.     The acts and omissions committed by Defendant, by and through its agents and employees, were willful, malicious, and in reckless disregard of Ms. Warnock's rights.

99.     As a direct and proximate result of Defendant's actions and omissions, by and through its employees and agents, Ms. Warnock has suffered and will continue to suffer lost wages, lost benefits and entitlements, loss of earning capacity, and other economic losses, damage to her career and reputation, personal humiliation, emotional distress, mental anguish, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff Ruby Warnock demands judgment against

Defendant for compensatory damages and equitable relief including but not limited to, lost back pay, lost benefits, lost front pay, loss of earning capacity, and other lost economic damages; non-economic damages including emotional distress and mental anguish, damage to career and reputation, personal humiliation, and loss of enjoyment of life; reinstatement; punitive damages; attorney's fees and costs under the FCRA; pre-judgment and post-judgment interest; and such other relief that this Court deems just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff Ruby Warnock hereby demands a jury trial on all claims set forth in the  Complaint.

Dated this 5th day of September, 2023.

Respectfully submitted,

The Law Office of Shands M. Wulbern, P.A.

By: */s/ Shands M. Wulbern*
Shands M. Wulbern
Florida Bar No. 0155217
3000 Hartley Road, Suite 10
Jacksonville, Florida 32257
(904) 570-9233
swulbern@wulbernlaw.com

*Trial Counsel for Plaintiff*